**FILED**
**Mar 28, 2022**
**10:31 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Donna Hannah | ) Docket No. 2020-03-1093 |
| | ) |
| v. | ) State File No. 103513-2019 |
| | ) |
| Senior Citizens Home Assistance | ) |
| Service, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Pamela B. Johnson, Judge | ) |

---

### Affirmed in Part, Reversed in Part, and Certified as Final

The employee, a home healthcare provider, alleged she suffered an injury to her neck when transferring a client. She initially believed she had pulled a muscle and did not report the incident immediately. She subsequently sought emergency care when her symptoms worsened. The attending physician recommended an emergency surgical fusion, at which time the employee notified a supervisor of her injury. The employer later denied the claim, asserting the employee had not provided timely notice of an injury, which the employer contended resulted in prejudice. The employer further alleged the employee had failed to identify by time and place of occurrence an accident resulting in her injury. Following a trial, the court concluded: (1) the employee had provided sufficient notice of her injury; (2) she was entitled to payment of past medical expenses that were reasonable, necessary, and causally related to the injury; (3) she was entitled to temporary disability benefits; (4) she was entitled to permanent disability benefits based on the impairment rating assigned by her treating physician; and (5) she was entitled to additional attorneys' fee and expenses for the employer's "wrongful" denial of her claim. The employer has appealed. Having carefully reviewed the record, we reverse the trial court's award of temporary partial disability benefits and affirm its order in all other respects. We certify as final the trial court's order as modified.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Tiffany B. Sherrill and Alex B. Morrison, Knoxville, Tennessee, for the employer-appellant, Senior Citizens Home Assistance Service, Inc.

Monica Rejaei, Memphis, Tennessee, for the employee-appellee, Donna Hannah

**Factual and Procedural Background**

Donna Hannah ("Employee") was employed by Senior Citizens Home Assistance Service, Inc. ("Employer"), as a CNA providing home healthcare services. Employee alleged she suffered an injury to her cervical spine on September 30, 2019, when she transferred a client from an electric chair to a walker and then into a shower chair to assist the client with bathing, after which she reversed the process and moved the client back to her electric chair. Employee testified she believed she had a pinched nerve or pulled a muscle that would get better on its own. She did not immediately report the incident and continued working.

Over the following two weeks, Employee's pain increased, resulting in her seeking evaluation at an emergency room on October 14, 2019. After an initial evaluation, she was seen by Dr. Edward Akeyson, the neurosurgeon on call at the time she appeared in the emergency room. An MRI revealed a herniated disc at C6-7 with spinal cord and nerve root compression, and Dr. Akeyson recommended emergency surgery to address Employee's condition. Surgery was performed on October 15, and the subsequent medical records reflect that Employee had an uneventful recovery. Dr. Akeyson placed Employee at maximum medical improvement on April 16, 2021, completing a Final Medical Report (Form C30A) on May 17, 2021, indicating Employee had no permanent restrictions and assigning a 9% permanent medical impairment rating.

Employee saw Dr. Patrick Bolt for an examination at Employer's request on June 2, 2021. In reply to Employer's inquiry regarding whether Employee's cervical spine injury was primarily the result of her alleged work injury, Dr. Bolt responded in the affirmative, stating that, based on the history Employee provided, her pain began two weeks prior to her emergency room visit when she transferred a patient from an electric chair. Dr. Bolt assigned a 7% permanent medical impairment rating.

Both physicians were deposed, and both testified that Employee's condition was consistent with the reported mechanism of injury. Addressing the timeframe of the injury, Dr. Akeyson testified there may have been some time between when the injury occurred and when Employee's symptoms became apparent. He explained, "there may be some time lapse before symptoms are apparent or the process progresses enough that the symptoms would be apparent." He also said the injury likely did not happen "months" prior to her seeking medical care, as he did not think a disc herniation such as Employee had would have been asymptomatic for very long. In his deposition, Dr. Bolt addressed the absence in the medical records of any indication by Employee of sudden trauma or a specific event precipitating her complaints. However, he stated that the mechanism of injury described by Employee is not one that he would necessarily classify as "trauma."

He also testified that, in speaking with Employee, she seemed certain of how she was injured, and he had no reason to doubt her credibility.

There was conflicting testimony concerning whether Employee gave proper notice of the alleged injury. Employee testified she communicated with Sarah Morrison, Employer's Blount County Coordinator, on September 29, 2019, indicating in a text message that she was having difficulty performing her work with a client, Ms. Pomphrey. The text indicated Employee was having difficulty transferring Ms. Pomphrey from her chair to her walker to her shower chair and back again, stating it was "killing me." Employee asked in the text whether she could be assigned other clients whom she would not have to bathe. Employee further testified that her injury occurred the following day on September 30, 2019.

On October 14, the date of Employee's initial visit to the emergency room, she communicated via text with her supervisor, Judy Timbs, concerning her need for medical treatment and her difficulty in performing her job. She indicated she would be unable to make it to her clients' houses that day because she was "hurting so bad I can barely move." She texted Ms. Timbs the following morning, informing her that an MRI had revealed the source of her complaints to be in her neck. Later that morning, she texted Ms. Timbs to let her know she was having surgery that day and would likely be unable to work for the next two months. When Ms. Timbs asked her if she knew how she "messed [her neck] up," Employee responded that "[i]t was hurting the week before but got worse the day I was at [Ms.] Phelps putting those book boxes in her garage was when it started." Employee's response stated that she "told Sarah [Morrison] it was killing me moving [P]omphrey from her elect[ric] chair to walker then walker to shower then after shower same thing," adding "it just got worse and yesterday I couldn't take it . . . ."

Ms. Timbs testified that she did not recall the October 14 and 15 text messages, stating instead that Employee had come to her office to tell her she was injured and indicated she did not know how the injury had occurred. She testified she did not remember being told that Employee's injury was related to moving a client, and she believed Employee was injured at home. Ms. Timbs also indicated that, while she remembered the in-person conversations she had with Employee, she does not recall the text message communications, stating "I don't pay much attention to [text messages] really because I got them all the time from caregivers." Ms. Timbs denied speaking to Employer's director of human resources, Tricia Stooksbury, about Employee's injury, testifying "I don't recall speaking to her about it. I just told her what was going on and I don't remember the conversation, of course."

Ms. Stooksbury also testified at trial, indicating the first day she became aware of Employee's injury was on October 15, the day surgery was performed. She testified that she did not fill out paperwork at that time because she had been unable to speak with Employee before surgery and needed additional information from Employee to report the

claim.  She testified she spoke with Employee a few days after her surgery, and a recording of that conversation was played for the court.  In the conversation, Employee informed Ms. Stooksbury that the injury was work-related, resulting from "picking up Ms. Pomphrey," prompting Ms. Stooksbury to report the claim to Employer's workers' compensation insurance carrier.  Ms. Stooksbury asked when the injury occurred, and Employee responded that she had been working with her neck complaints for two weeks, explaining that she thought it was just a pinched nerve.  When asked what caused her injury, Employee responded "[p]ulling her.  Picking her up and putting her out of her electric chair onto the walker.  And then onto the shower chair in the bathroom. . . . And then doing the same thing again."  Ms. Stooksbury then asked Employee what treatment she was receiving and said Employee responded that she had surgery for a "disc pinching my spine in my neck."

Employer denied Employee's claim on October 31, 2019, stating in the notice of denial that the basis was "[l]ate reporting, [and] [n]o medical evidence of work related condition," adding that "[r]ecords have been requested."  Employer's policy regarding reporting work-related injuries required employees to report any injury within 24 hours.  At the time Employer filed its notice of denial, Employer had not obtained the medical records related to Employee's treatment and had not asked the treating physician his opinion regarding causation.

After conducting a compensation hearing, the trial court concluded Employee had provided timely notice of her injury and, even if notice had not been timely, Employer had not demonstrated any prejudice from the delayed notice.  The court ordered Employer to pay temporary disability benefits from the date of the surgery to January 8, 2020, concluding that Employer had failed to offer Employee work within her restrictions.  The court found the 9% medical impairment rating assigned by Dr. Akeyson to be the more accurate impairment and determined Employee was entitled to an "original" award of permanent partial disability benefits consistent with the 9% impairment rating, in accordance with Tennessee Code Annotated section 50-6-207(3)(A).  In addition, the court ordered Employer to pay past medical expenses that were reasonable, necessary, and causally related to the work injury.  The court also found Employer had wrongfully denied Employee's claim under Tennessee Code Annotated section 50-6-226(d)(1)(B) and awarded additional attorneys' fees in the amount of $19,245.00 and expenses in the amount of $1,655.05.  Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise.  *See* Tenn. Code Ann. § 50-6-239(c)(7) (2021).  When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court.  *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009).  However, "[n]o similar deference need be

afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at \*6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2021).

**Analysis**

Employer raises five issues on appeal: (1) whether the trial court erred in finding Employee's alleged injury was "primarily the result of an 'identifiable' work incident"; (2) whether the court erred in finding Employee provided proper notice of her injury and, if not, whether Employer was prejudiced by that failure; (3) whether the court erred in awarding Employee temporary disability benefits; (4) whether the court erred in accepting the impairment rating of Dr. Akeyson over that of Dr. Bolt; and (5) whether the court erred in awarding additional attorneys' fees and expenses based on an alleged wrongful denial of the claim.

*Identifiable Work Incident*

Tennessee Code Annotated section 50-6-102(14) defines "injury" to include an "injury by accident . . . only if it is caused by a specific incident, or set of incidents, . . . and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2021). Employer contends that, irrespective of the fact that Drs. Akeyson and Bolt identified the mechanism of Employee's injury based on Employee's history as communicated to them, "this, in and of itself, was insufficient to 'establish the occurrence of a specific incident . . . or a set of incidents identifiable by time and place of occurrence.'" Employer notes that Employee's medical records document different timelines as to when her *symptoms* began and that Employee provided different statements defining her mechanism of injury. Pointing to the absence in the medical records of a report of an identifiable "injury," Employer contends that Employee's descriptions of moving boxes and lifting a client as being the time when her symptoms "started" are inconsistent and, combined with Employee's statement that she did not know the date of her injury, are insufficient to prove an identifiable injury. According to Employer, these inconsistencies, considered in light of the testimony of two of Employee's witnesses who testified they

5

believed Employee's injury occurred on October 13 or October 14, demonstrate that Employee failed to carry her burden of proving an identifiable incident.[1]

Considering the entirety of the record, we note that Employee's description of how the injury occurred has been consistent. Employee described transferring a client from an electric chair to a walker to a shower chair and back again, resulting in pain in her shoulder that Employee believed to be a pulled muscle or a pinched nerve but which was ultimately determined to be a herniated cervical disc compressing on the nerve root. Employee's supervisor at the time, Ms. Timbs, testified that Employee indicated she did not know how she had hurt herself. However, the text message exchange between Employee and Ms. Timbs, which Ms. Timbs did not deny receiving, was consistent with Employee's account of her injury.

Employer also points to Employee's mention of moving boxes as possibly being the cause of her herniated disc, asserting that Employee presented this information as possibly being the mechanism of injury. However, a careful reading of the text message in which Employee addressed "moving boxes" is inconsistent with Employer's interpretation. Employee stated that her problem *worsened* when she moved the boxes at a client's house, not that it *began* when she moved the boxes. Moreover, while a text communication that was sent the day prior to the alleged date of injury indicates Employee was having difficulties with Ms. Pomphrey, the September 29 text does not indicate Employee's injury occurred on or before that date. Employee's description of how her injury occurred has been consistent throughout the claim, and the two medical experts testified that the mechanism of injury she described is consistent with the type of injury she sustained. The trial court concluded that Employee provided sufficient evidence to establish that she suffered an accidental injury to her cervical spine while providing home healthcare services to a particular client. We conclude from our review of the record that the evidence does not preponderate against the trial court's determination that Employee suffered an injury by accident while working on September 30, 2019.

*Notice of Injury*

Tennessee Code Annotated section 50-6-201(a) provides that "[e]very injured employee . . . shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury." The statute additionally provides that "[n]o compensation shall be payable . . . unless the written notice is given to the employer within fifteen (15) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented." Tenn. Code Ann. § 50-6-201(a) (2021). The notice

---

[1] Employee's daughter-in-law and a niece of one of Employee's clients testified as to when they thought Employee's injury occurred. Neither testified that Employee told them when her symptoms began, and both testified essentially that it was their impression Employee's injury occurred on October 13 or 14.

requirement "exists so that the employer will have the opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee." *Jones v. Sterling Last Corp.*, 962 S.W.2d 469, 471 (Tenn. 1998). Consequently, "the giving of statutory notice to the employer is an absolute prerequisite to the right of an employee to recover compensation under the workers' compensation law." *Bogus v. Manpower Temp. Serv.*, 823 S.W.2d 544, 546 (Tenn. 1992).

However, we also note that, as part of the 2013 Workers' Compensation Reform Act, the General Assembly clarified the notice requirement as follows:

> No defect or inaccuracy in the notice shall be a bar to compensation, unless the employer can show, to the satisfaction of the workers' compensation judge before which the matter is pending, that the employer was prejudiced by the failure to give the proper notice, and then only to the extent of the prejudice.

Tenn. Code Ann. § 50-6-201(a)(3).

Having concluded that the evidence supports the trial court's finding that Employee suffered a work-related injury to her cervical spine on September 30, 2019, we agree with the trial court that Employee provided sufficient explanation as to why she did not give immediate notice of the occurrence of the incident, and we conclude the trial court did not err in finding that notice given on the fifteenth day after the incident was sufficient under the circumstances presented. Moreover, we agree with the trial court that Employer has failed to demonstrate actual prejudice as required by section 50-6-201(a)(3). Although Employer was not able to administer a drug screen immediately following the incident in accordance with Employer's stated policy, there are no suggestions that Employee was intoxicated or under the influence of drugs or alcohol at any time during her employment. Employer argues that its ability to investigate Employee's injury was compromised because many of its clients who might have offered factual testimony have memory issues. However, Employer offered no evidence that it attempted to interview any of its clients to ascertain whether they had any relevant information related to Employee's workers' compensation claim.

Employer further asserts that it was not given an opportunity to provide a panel of physicians. While the notice of injury came on the day Employee was scheduled for emergency surgery, Employer could have advised Employee of its obligation to provide a panel when the notice was given and could have provided a panel prior to Employee's receiving any post-surgical care or treatment. We view these circumstances as being similar to those cases in which medical care is provided on an emergency basis and the doctor on call at the time of the emergency becomes the initial authorized physician. Such circumstances do not hinder an employer's ability to offer a panel of physicians when such

7

emergency care has ended. As noted by the trial court, Employer "was not prejudiced by any delay in reporting because it received sufficient opportunity to investigate [Employee's] claim, as shown by it taking her recorded statement and obtaining signed medical releases." Thus, we agree with the trial court that Employer has demonstrated no actual prejudice as a result of the delayed notice.

*Temporary Disability Benefits*

The trial court concluded Employee was entitled to temporary total disability benefits from the date of her October 15, 2019 surgery until Dr. Akeyson released her to return to restricted work at her first post-surgical appointment on October 29. Concluding that Employee's temporary partial disability began on October 29 and continued until Employee secured employment with another employer on January 8, 2020, the trial court awarded an additional ten weeks of temporary partial disability benefits for a total of twelve weeks of temporary disability benefits.[2] Employer asserts the trial court erred in awarding temporary total disability benefits "because Employee has not met her burden of proof showing a prima facie case of entitlement to temporary total benefits."

An employee retains the burden of proof with respect to every essential element of a claim for benefits. *Scott v. Integrity Staffing Sols.*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). To make a prima facie case for temporary total disability benefits, an employee must show that he or she was (1) totally disabled from working by a compensable injury; (2) that there was a causal connection between the injury and the employee's inability to work; and (3) the duration of that period of disability. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). *See also Cleek v. Wal-mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000). An injured worker may be entitled to temporary partial disability benefits when "the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005).

At trial, a recording of a telephone conversation that occurred soon after Employee's surgery disclosed that Employer's Director of Human Resources, Ms. Stooksbury, suggested to Employee that she was "supposed to be out [of work] two months" following her surgery," and that Employee had responded that Dr. Akeyson said "two months . . . at the most." Dr. Akeyson's records reveal that, at Employee's first post-surgical visit two weeks after her surgery, he imposed work restrictions including a lifting restriction and recommendations that Employee avoid repetitive bending, lifting, twisting, and turning. There is sufficient proof in the record that Employee was totally disabled from the date of the cervical fusion surgery until Dr. Akeyson allowed her to return to restricted work two

---

[2] Because Employee did not earn any income during the ten weeks that the court determined she was entitled to temporary partial disability benefits, the court awarded the same weekly amount of temporary partial benefits as it awarded for Employee's weekly temporary total benefit.

weeks later. Accordingly, we see no merit in Employer's assertion that the trial court erred in awarding temporary total disability benefits for the two-week period immediately following Employee's surgery and until she returned to Dr. Akeyson on October 29, 2019.

Employer further argues that Employee failed to make any attempt to return to work following her October 29, 2019 post-surgical visit with Dr. Akeyson. According to Employer, "[a]s [Employee] would not provide information to the Employer documenting her restrictions, Employer was prevented from attempts to accommodate her." As we have previously observed,

> Whether an employee is entitled to temporary partial disability benefits . . . hinges on the reasonableness of the employer's action in offering a light duty position and the reasonableness of the employee in declining the offer. This analytical framework is similar to the consideration of whether an employee has made a "meaningful return to work." With respect to that issue, the Tennessee Supreme Court observed:
>
>> There will be a variety of factual situations wherein the courts will be required to construe the meaning of the words [meaningful return to work]. The ultimate resolution of their meaning will be leavened by an assessment of the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work.
>
> *Newton v. Scott Health Care Ctr.*, 914 S.W.2d 884, 886 (Tenn. Workers' Comp. Panel Dec. 15, 1995). . . . Ultimately, "[t]he resolution of what is reasonable must rest upon the facts of each case and be determined thereby."

*Frye v. Vincent Printing Co.*, No. 2016-06-0327, 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *16-18 (Tenn. Workers' Comp. App. Bd. Aug. 2, 2016) (internal citations omitted).

Where an employee seeks temporary partial disability benefits, it is the employee's burden in the first instance to prove her inability to return to her preinjury work. Here, there is no evidence suggesting Employer offered Employee a return to work within her restrictions, but there is also no evidence Employee made Employer aware of her restrictions. In her conversation with Ms. Stooksbury following her surgery, Employee indicated she would be out of work for two months. While the record does not disclose whether Employer could have accommodated the October 29 restrictions, Employer was not provided those restrictions or given the opportunity to address whether it could accommodate them. Employee failed to establish she was unable to work following her first post-surgical visit with Dr. Akeyson, and she never afforded Employer an opportunity to accommodate the restrictions Dr. Akeyson imposed. Accordingly, we reverse the trial

court's award of temporary partial disability benefits for the time period from Employee's October 29, 2019 visit with Dr. Akeyson until she obtained new employment on January 8, 2020.

*Impairment Rating*

Employer argues that "even if Employee's claim is deemed compensable, the impairment rating provided by Dr. Bolt was more appropriate than that provided by Dr. Akeyson." We disagree.

According to Employer, "Dr. Akeyson was unable to even explain the basis for his 9% impairment rating during his deposition." Employer further argues that because Dr. Akeyson "was unable to justify his impairment rating," the trial court erred in accepting his rating over that of Dr. Bolt. In contrast to Employer's characterization of Dr. Akeyson's testimony, we note that he testified he used the "AMA Sixth Edition guidelines" in arriving at an impairment rating. On cross-examination he testified that he used Table 17-2 in calculating the impairment and "gave [Employee] a nine percent rating, so she would have to be a Class 2." Further, Dr. Akeyson testified he also used Table 17-7 as part of his evaluation for the rating and determined that Employee "had diminished sensation in multiple nerve root distributions in the left arm." In addition, he testified that he came to the determination that Employee still had radiculopathy based on his "[c]linical judgment and physical examination." Moreover, Dr. Bolt testified that he used the same table as Dr. Akeyson in calculating Employee's impairment. When asked to offer an explanation regarding the difference between the ratings, Dr. Bolt testified that he had no explanation other "than to say that reasonable people can . . . and do disagree on impairment ratings all the time." He testified the nine percent rating Dr. Akeyson assessed would be a Class 2 rating but that he "thought [Employee] was a Class 1 disc herniation." He explained that the distinction between Class 1 and Class 2 was a finding of radiculopathy, and that he did not find a "verifiable" active radiculopathy, so he selected Class 1.

The trial court considered both impairment ratings, noting that Dr. Akeyson treated Employee for two years. The court acknowledged that both doctors "used the same table in the AMA Guides but selected different classes of impairment based on whether [Employee's] radiculopathy had resolved with surgery." According to the trial court, Dr. Akeyson "offered a detailed and plausible explanation of his methodology in assigning a rating," and the court concluded that Employee "sustained a nine-percent permanent impairment." We conclude the preponderance of the evidence supports the trial court's finding that Employee sustained a nine percent permanent impairment rating consistent with Dr. Akeyson's opinion.

*Attorneys' Fees For "Wrongful" Denial*

Finally, Employer contends the trial court erred in awarding Employee additional attorneys' fees for an alleged "wrongful" denial. Tennessee Code Annotated section 50-6-226(d)(1)(B) provides trial judges the discretion to award additional attorneys' fees and expenses when an employer "[w]rongfully denies a claim." As we have previously noted, the word "wrongfully" is statutorily defined as "erroneous, incorrect, or otherwise inconsistent with the law or facts," *id.*, and "there is nothing in the language of the statute supporting a conclusion that an employee must show 'lack of good cause' in seeking attorneys' fees and expenses for a wrongful denial of a claim," *Andrews v. Yates Services, LLC*, No. 2016-05-0854, 2018 TN Wrk. Comp. App. Bd. LEXIS 22, at *10 (Tenn. Workers' Comp. App. Bd. May 8, 2018). Employer advances two arguments in support of its insistence that the trial court erred in awarding attorneys' fees and expenses for a "wrongful" denial.

First, Employer argues that Employee's injury is not compensable "as it is not based on an identifiable incident that is primarily work-related," asserting also that "Employee did not provide proper notice which prejudiced the Employer." Our conclusions above pretermit the need to address Employer's first argument.

Second, Employer asserts that the award of attorneys' fees was inappropriate "based on the circumstances." More specifically, Employer asserts that it did not learn of Employee's work injury until she was at the emergency room for surgery and that it "did its best to investigate the claim," including speaking with multiple staff members about conversations they had with Employee about her alleged injury. Further, Employer asserts that Employee's statement to her supervisor that she did not know the cause of her pain "complicated the investigation." Employer emphasizes that Dr. Akeyson acknowledged in his deposition that he did not know Employee was claiming she sustained a work injury "until he was contacted by Employee's attorney a couple of months after the surgery." Based on this and other proof presented at trial, Employer postulates that its denial of the claim "was reasonable based on information available to them" and that "this is not a case in which [Employer] should be penalized." Although we agree with Employer that a trial court may consider the facts and circumstances in making a discretionary decision whether to award additional attorneys' fees and expenses for a "wrongful denial," we note that section 50-6-226(d)(1) is clear in defining "wrongful" to include circumstances in which an employer's denial is erroneous or incorrect.

In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), Justice Koch addressed an appellate court's role when asked to review a question involving the trial court's discretion:

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court

abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Id.* at 524 (citations omitted). The abuse of discretion standard "does not permit an appellate court to substitute its judgment for that of the trial court." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011). Moreover, pursuant to the abuse of discretion standard, "the appellate court should presume the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision." *Id.* at 106. As we have previously concluded, the use of the word "may" in section 50-6-226(d)(1) "vests the trial court with discretion to award or not to award attorneys' fees and expenses pursuant to this section, and we will review any such decision under an abuse of discretion standard." *Andrews*, 2018 TN Wrk. Comp. App. Bd LEXIS 22, at *11-12.

While an employer may assert defenses that it contends relieve it of the obligation to provide workers' compensation benefits, one of the risks associated with the decision to deny a claim is being ordered to pay attorneys' fees and expenses if the denial is determined to be "wrongful" in accordance with section 50-6-226(d)(1)(B). We have previously decided that, in analyzing an award of attorneys' fees under section 50-6-226(d)(1)(B), we must determine at what point in time a trial court is to consider the incorrectness of an employer's decision to deny a claim. *Andrews*, 2018 TN Wrk. Comp. App. Bd. LEXIS 22, at *10. In *Andrews*, the majority reached the following conclusions:

> [A] trial court may consider whether an employer's decision to deny a claim was erroneous, incorrect, or otherwise inconsistent with the law or facts *at the time the denial decision was made*. Thus, it is within a trial court's discretion to consider an employer's decision to deny a claim in light of evidence or other information reasonably available to the employer at the time the claim was denied. Moreover, such a determination is fact-dependent, and we do not intend to suggest there is a bright-line test defining the parameters of such a decision. Instead, a trial court may consider the facts and circumstances of each individual case to assess whether an employer's decision to deny a claim was incorrect, erroneous, or otherwise inconsistent with the law or facts at the time the decision was made.

*Id.* at *12-13.

Here, Employer has not addressed how or in what manner the trial court purportedly abused its discretion in awarding attorneys' fees and expenses. When an appellant fails to offer substantive arguments on appeal, an appellate court's ability to conduct meaningful appellate review is significantly hampered. *Holmes v. Ellis Watkins d/b/a Watkins Lawn Care*, No. 2017-08-0504, 2018 TN Wrk. Comp. App. Bd. LEXIS 7, at *3-4 (Tenn.

12

Workers' Comp. App. Bd. Feb. 13, 2018). Moreover, "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). In this case, we are unable to conclude that the trial abused its discretion in awarding attorneys' fees and expenses in accordance with section 50-6-226(d)(1)(B).

## Conclusion

For the foregoing reasons, we reverse the trial court's award of temporary partial disability benefits for the time period from Employee's October 29, 2019 post-surgical visit with Dr. Akeyson until Employee obtained other employment on January 8, 2020. In all other respects, we affirm the decision of the trial court and certify the trial court's order, as modified herein, as final. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Donna Hannah | ) | Docket No. 2020-03-1093 |
| | ) | |
| v. | ) | State File No. 103513-2019 |
| | ) | |
| Senior Citizens Home Assistance Service, Inc., et al. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' Compensation Claims | ) | |
| Pamela B. Johnson, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 28th day of March, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Alex B. Morrison<br>Tiffany B. Sherrill | | | | X | abmorrison@mijs.com<br>tbsherrill@mijs.com |
| Monica Rejaei | | | | X | mrejaei@nstlaw.com<br>lbaggett@nstlaw.com |
| Pamela B. Johnson, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov